IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE:  FRED AUSBURN and                     CASE NO.: 4:14-bk-16153
        JANET L. AUSBURN, DEBTORS         CHAPTER 13

## MEMORANDUM OPINION

Before the court is an *Amended/Modified Motion to Determine Violation of the Automatic Stay, and Motion to Void the Sale of Property* ("Amended Motion") filed by Fred Ausburn and Janet L. Ausburn, the debtors ("debtors"), on December 1, 2014, at docket entry 18, and a *Response to Amended/Modified Motion to Determine Violation of the Automatic Stay, and Motion to Void the Sale of Property* ("Response") filed by First Security Bank ("FSB") on December 12, 2014, at docket entry 23. The court heard the Amended Motion and Response on December 17, 2014.

In their Amended Motion, the debtors allege that FSB judicially foreclosed on and subsequently held a commissioner's sale of their home in violation of the automatic stay. The debtors further contend that their home is property of the estate, and they intend on curing the outstanding arrearage in their Chapter 13 plan. FSB counters that the home is not property of the debtors' estate because the debtors' statutory and equitable rights of redemption terminated prepetition. Additionally, FSB argues that since the home is not property of the estate, the debtors have no right under the United States Bankruptcy Code ("Code") to cure an arrearage pursuant to 11 U.S.C. § 1322(c). At the conclusion of the hearing, the court gave the parties an opportunity to brief the issues presented and took the matter under advisement on January 10, 2015. For the reasons stated below, the Amended Motion is granted, and the postpetition foreclosure sale of the debtors' home is *void ab initio*.

## I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

## II. Background

At the hearing, the debtors and FSB stipulated to the following facts:

**1976.** The [debtors] originally purchased the home located at 725 Forest Lane in Benton, Arkansas, in 1976 for $34,500.00. The loan was financed by Benton Savings and Loan Association.

**January 20, 1988.** The [debtors] refinanced their home with Benton Savings and Loan with a note and mortgage amount of $68,300.00 (hereinafter referred to as the "Loan"). [FSB] is the successor in interest to Benton Savings and Loan Association, later known as the Union Bank of Benton. The [debtors] waived their statutory right of redemption pursuant to the terms of the mortgage.

**February 4, 2011.** The [debtors] took out a second mortgage on their home from Regions bank for $51,959.00.

**March 11, 2011.** The [debtors] obtained a Modification of their Mortgage on the [FSB] Loan indicating a maturity date of May 1, 2018. (See Exhibit #1 – Modification of Mortgage.)

**September 6, 2011.** [FSB] filed a Complaint for Foreclosure and Other Relief in Saline County, Arkansas Circuit Court Case No. CV 2011-661 (hereinafter referred to as the "Foreclosure Action"), with the [debtors] and Regions Bank listed as Defendants. The [debtors] were approximately $1,968.00 past due at the time. The last payment made by the [debtors] was the June 1, 2011 payment. (See Exhibit #2 – Complaint for Foreclosure.)

**October 12, 2011.** [FSB] and the [debtors] enter into a Settlement Agreement and Release in the Foreclosure Action whereby the [debtors] are permitted to pause the foreclosure, requiring, among other things, that the loan is made current and attorneys' fees are paid. (See Exhibit #3 – Settlement Agreement and Release.) [FSB] and the [debtors] sign an Agreed Order Granting Decree of Foreclosure. (See Exhibit #4 – Agreed Order Granting Decree of Foreclosure.)

2

Pursuant to the terms of the Settlement Agreement and Release, the [debtors] and [FSB] agree that the Foreclosure Action will remain open but dormant, and that if the [debtors] default on the terms of the Settlement Agreement and Release, the Agreed Order Granting Decree of Foreclosure will be submitted for entry and the Foreclosure Action re-started.

**July 2014.** The [debtors] defaulted on the Settlement Agreement and Release by becoming delinquent on their payments to [FSB]. The [debtors] also became delinquent on their mortgage to Regions Bank.

**October 21, 2014.** In accordance with the terms and conditions of the Settlement Agreement and Release, the Agreed Order Granting Decree of Foreclosure is submitted to the Saline County Circuit Court for entry. The [debtors] are notified that the Decree is being submitted for entry.

**October 28, 2014.** The Agreed Order Granting Decree of Foreclosure is entered by the Saline County Circuit Court. (See Exhibit #4 – Agreed Order Granting Decree of Foreclosure.) The foreclosure sale is set for November 18, 2014. The [debtors] did not redeem the property either before or after entry of the Agreed Order Granting Decree of Foreclosure.

**November 17, 2014.** The [debtors] filed Chapter 13 bankruptcy, Case #4:14-bk-16153, at 2:36 p.m. A notice of filing bankruptcy was filed in the Saline County Circuit Court at 3:33 p.m. (See Exhibit #5 – Notice of Filing Bankruptcy filed in Circuit Court.)

**November 18, 2014.** The [debtors] filed an Emergency Motion to Set Aside/Cancel Sale of property at 9:52 a.m. in Bankruptcy Court. A telephone hearing was held at 10:45 a.m. with [the court], [FSB's] attorney Gary Jiles, and [d]ebtors' attorney Beverly Brister. [The court] declines to have a hearing on the merits on this state court matter.

**November 18, 2014.** The [debtors'] home was sold to Regions Bank at a Commissioner's Sale at 11:00 a.m.

**December 3, 2014.** The Order of Confirmation of the sale and the Commissioner's Report of sale were filed. (See Exhibits #6 – Order and #7 – Report.) These items were docketed on December 11, 2014. Regions Bank remitted $34,000.00 to Saline County Circuit Clerk. (See Exhibit #8 – Clerk's Receipt.)

**December 10, 2014.** [FSB] submitted an Order of Distribution for the funds, with a distribution amount of $26,724.49. This Order has not been entered. (See Exhibit #9.)

3

In addition to the above agreed facts, the debtors and FSB stipulated to the entry of the nine exhibits referenced in the agreed facts.

### III. Discussion

In their Amended Motion, the debtors contend that their home is property of their bankruptcy estate, and that they should be permitted to cure the outstanding arrearage on the property pursuant to 11 U.S.C. § 1322(c)(1) because they filed a voluntary petition prior to the commissioner's sale.[1] FSB responds that the debtors' home is not property of the estate, pursuant to 11 U.S.C. § 541, due to the debtors' waiver of their *statutory* right of redemption in their mortgage and the termination of the debtors' *equitable* right of redemption ten days after the entry of the *Agreed Order Granting Decree of Foreclosure* ("Agreed Order"). FSB argues that because the property is not property of the estate, the debtors cannot rely upon the cure provision contained in 11 U.S.C. § 1322(c).

### A. Property of the Estate

"A debtor's bankruptcy estate consists of all legal and equitable interests of the debtor existing at the commencement of the bankruptcy case." *In re Sugarloaf Prop., Inc.*, 286 B.R. 705, 708 (Bankr. E.D. Ark. 2002) (citing 11 U.S.C. § 541(a)). "Generally speaking, state law determines the nature and extent of a party's property interest for the purposes of Code provisions." *Schinck v. Stephens* (*In re Stephens*), 221 B.R. 290, 292 (Bankr. D. Me. 1998) (citations omitted). "Under Arkansas law, a debtor has no further rights in property once its rights of redemption have expired." *Sugarloaf,* 286 B.R. at 708.

---

[1] The debtors' Amended Motion also sought relief for violation of the automatic stay; however, at the hearing, the debtors withdrew that cause of action pursuant to an agreement with FSB.

"A mortgagor's 'equitable right of redemption' is the equitable right to redeem his property by performing the conditions of the mortgage until the mortgage is foreclosed." *Id.* (citing *In re Stanley*, 182 B.R. 241, 243 (Bankr. W.D. Ark. 1994)). Generally, a "mortgagor's equitable right of redemption" terminates pursuant to the terms of a judicial foreclosure decree, although the redemption period may be extended "for a reasonable period of time." *Id.* Upon termination of his equitable right of redemption, a "mortgagor no longer has a right to redeem his property from the mortgage." *Id.* (citing *In re Crime Free, Inc.*, 196 B.R. 116, 118 (Bankr. E.D. Ark. 1996)).

Under Arkansas law, a mortgagor also possesses a statutory right of redemption pursuant to Arkansas Code Annotated § 18–49–106. "Where the statutory right of redemption is not waived by the mortgage instrument, the mortgagor's statutory right of redemption exists but is not a 'legal or equitable' interest in the foreclosed property under § 541 because redemption is only the right to tender full payment and gain possession of the foreclosed property." *Id.* at 709 (citing *First Fed. Sav. & Loan Assoc. of Titusville v. Booth* (*In re Booth*), 18 B.R. 816, 817 (Bankr. E.D. Ark. 1982)).

In the present case, the parties stipulated to entry of the Agreed Order signed by the Honorable Gary Arnold, Saline County Circuit Judge, on October 28, 2014. The Agreed Order includes two relevant provisions. First, paragraph nine gives the debtors ten days within which to satisfy the $35,172.33 judgment awarded by the court. (Agreed Order ¶¶ 7, 9.) Consequently, the debtors' equitable right to redeem the property terminated on or about November 7, 2014. Second, paragraph D provides that "this Decree extinguishes all the right, title and interest of [the debtors], including but not limited to ownership interests and dower, curtesy and leasehold interests, if any, and all rights of redemption in and to the Real Property[.]" (Agreed Order ¶ D.)

5

The debtors admit that they waived their statutory right of redemption in their mortgage and "did not redeem the property either before or after entry of the [Agreed Order]"; thus, by *state law*, the debtors did not possess any legal or equitable interest in their home because their statutory and equitable rights of redemption terminated prepetition.

While "state law determines the nature and extent of a party's property interest[,] . . . [t]he Code determines what property becomes property of the bankruptcy estate, but it does not, *routinely*, create or enhance property rights." *Stephens,* 221 B.R. at 292–93 (emphasis added) (citation omitted). However, if Congress so provides, "contrary provisions of state law must accordingly give way" to federal law. *Johnson v. First Nat'l Bank of Montevideo, Minn.* (*In re Johnson*), 719 F.2d 270, 273 (8th Cir. 1983), *cert. denied*, 465 U.S. 1012 (1984). Section 1322 of the Code acts in this manner and represents such an exercise of Congress's authority in relation to debtors' state law property rights.

### B. Right to Cure Under § 1322(c)

"Subsections 13[2]2(b)(2) and (5) of the [ ] Code, when read together, permit a debtor to propose in a chapter 13 plan to cure a default in a home mortgage debt secured only by a lien in the debtor's principal residence." *In re Brown*, 282 B.R. 880, 882 (Bankr. E.D. Ark. 2002). In 1994, Congress amended the Code to add subsection (c)(1) to the curing equation of section 1322(b). Subsection 1322(c)(1) restricts "a debtor's ability to cure a default on a home mortgage by providing":

> [n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

*Id.*; 11 U.S.C. § 1322(c)(1) (2014).

Before the adoption of (c)(1), "confusion [existed] as to when Chapter 13 debtors lost their right to cure and reinstate a home mortgage." *In re Beeman*, 235 B.R. 519, 524 (Bankr. D. N.H. 1999). Some courts held that a debtor lost his right to cure "when a foreclosure auction was held." *TD Bank, N.A. v. LaPointe* (*In re LaPointe*), 505 B.R. 589, 594 (B.A.P. 1st Cir. 2014) (quoting *Beeman*, 235 B.R. at 594). In *Clark*, the Court of Appeals for the Seventh Circuit found that a foreclosure judgment did not terminate the debtors' right to cure pursuant to section 1322(b) and that a "judgment of foreclosure does nothing but judicially confirm the acceleration" of a debtor's mortgage. *In re Clark*, 738 F.2d 869, 874 (7th Cir. 1984). In *Glenn*, the Court of Appeals for the Sixth Circuit noted that section 1322(b) was unclear when a debtor's right to cure terminated. *Fed. Land Bank of Louisville v. Glenn* (*In re Glenn*), 760 F.2d 1428, 1435 (6th Cir. 1985). Thus, the court relied on a "pragmatic" approach in holding that the "cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises." *Id.* "[I]n 1987, the Court of Appeals for the Third Circuit held that a Chapter 13 debtor's right to cure and reinstate a home mortgage was lost, pursuant to state law, upon entry of a foreclosure judgment, which occurred before the actual foreclosure auction." *LaPointe,* 505 B.R. at 594–95 (citing *In re Roach*, 824 F.2d 1370, 1378–79 (3rd Cir. 1987)).

Subsequently, Congress adopted subsection (c)(1) in 1994 "to resolve th[e] confusion and [to] create a uniform standard" as to when a debtor's right to cure terminated. *Id*. at 595 (citing *In re Crawford*, 232 B.R. 92, 95 (Bankr. N.D. Ohio 1999); *In re Tomlin*, 228 B.R. 916, 918 (Bankr. E.D. Ark. 1999)). With the addition of subsection (c)(1), a debtor can now cure a default on a home mortgage "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). In applying this new federal standard, many courts have held that subsection 1322(c)(1) "altered the equation,

7

providing a supplemental, federal, right that enhances state law rights." *Stephens*, 221 B.R. at 293 (finding that subsection 1322(c)(1) "now grants debtors the opportunity to cure home mortgage defaults up to the foreclosure sale in a civil foreclosure action, whether or not state law principles would have extinguished the debtor's real property rights in the period preceding bankruptcy"). *See also In re Connors*, 497 F.3d 314, 322 (3rd Cir. 2007) (stating that "Congress added subsection (c)(1) to overrule *Roach* and establish a uniform time–the 'foreclosure sale'–for expiration of a debtor's *federal* right to cure") (emphasis added); *LaPointe*, 505 B.R. at 596–97 (discussing the preemptive effect of subsection 1322(c)(1) on a debtor's state law redemption rights as referenced in *Beeman* and finding that the *Beeman* court only erred in determining when a foreclosure sale was complete); *JP Morgan Chase Bank v. McKinney* (*In re McKinney*), 344 B.R. 1, 6 (Bankr. D. Me. 2006) (observing that subsection (c)(1) provides debtors "with substantive rights that do not exist in state law, rights that endure beyond expiration of the pre-sale redemption period, when the mortgagor's rights in the real estate would otherwise have been cut off"); *In re Pellegrino*, 284 B.R. 326, 330 (Bankr. D. Conn. 2002) (noting that "a Chapter 13 debtor may argue in good faith that despite an apparent loss of his equity of redemption through the interplay of state law . . . he may in essence 'revive' that equitable interest by confirming a Chapter 13 plan which, . . . utilizes [subs]ection 1322(c)(1) to cure the mortgage default"); *Beeman*, 235 B.R. at 524 (finding that "Congress unambiguously intended to preempt state redemption law by fixing the time when a Chapter 13 debtor's rights to cure and reinstate are terminated as when property 'is sold at a foreclosure sale,' regardless of whether state law terminates redemption rights at an earlier time").

In *Beeman*, the court declared that Congress clearly intended that section 1322(c) would preempt state law and create a federal right to cure that only terminates upon a foreclosure sale.

8

235 B.R. at 524. Furthermore, the court provided that in preempting state redemption law Congress "directed that state foreclosure law be used in determining [the] point in time [when the foreclosure process concludes]." *Id.* at 525. Relying on subsection 1322(c)(1), the court held that "Chapter 13 debtors have a federal interest in their principal residences up until the completion of the foreclosure process." *Id.* at 527.

Many of the cases cited above, including *Beeman*, rely on Congress's intent in drafting and adopting subsection (c)(1). Senator Grassley clearly conveyed his intent in his floor statement referencing subsection (c)(1), during which he stated:

> Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court (sic) has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 will preempt conflicting state laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

*In re Jenkins*, 422 B.R. 175, 179 (Bankr. E.D. Ark. 2010) (citing 140 Cong.Rec. S. 11462 (daily ed. October 6, 1994) (floor statement of Sen. Grassley)).

Several cases exist within our jurisdiction on this issue; however, none of these cases are dispositive. The court in *Stanley* found that a Chapter 13 debtor whose rights of redemption terminated prepetition "held no legal or equitable interest in the property on the date the petition was filed." 182 B.R. at 243. Although factually similar to the instant case, *Stanley* was decided prior to the adoption of subsection 1322(c)(1). In *Sugarloaf*, the court ruled that a *Chapter 7 debtor* "had no legal or equitable interest in the [p]roperty when it filed bankruptcy, and the [p]roperty [was] not property of the [d]ebtor's estate under 11 U.S.C. § 541." 286 B.R. at 709. Again, although factually similar, *Sugarloaf* involved a Chapter 7 debtor, and the Code does not afford Chapter 7 debtors the same curative protections as subsection 1322(c)(1). In *Crime Free*, the court held that a debtor's statutory and equitable rights of redemption terminated prepetition,

9

and he could not cure a default on property through a Chapter 11 plan. 196 B.R. at 117, 119. The court addressed the adoption of subsection (c)(1), but that subsection is only applicable in a Chapter 13 context, not Chapter 11. In *Brown*, the court considered whether a debtor who filed a Chapter 13 bankruptcy petition before the entry of an order confirming a commissioner's sale could provide for the curing of a mortgage default in his plan. 282 B.R. at 882–83. Relying on subsection 1322(c)(1), the court found that the debtor could cure "the default since the judicial foreclosure sale was not complete until after the petition was filed." *Id.* at 883. The court did not analyze the debtor's right to cure in relation to his redemption rights but noted "[a] more difficult question is presented if the decree provides for the extinguishment of the debtor's equity of redemption prior to confirmation of the sale." *Id.*, n.1.

In applying the federal curative provision contained in subsection (c)(1), courts must turn to state law to determine when a foreclosure sale is complete. Two approaches have dictated case law: the gavel rule and the sold rule. Courts following the gavel rule hold "that the debtor's right to cure is cut off once the gavel falls at the foreclosure auction." *LaPointe*, 505 B.R. at 595. Courts adopting the sold rule "hold that the statutory language is intended to cut off the debtor's right to cure only when the entire sale transaction is complete under state law." *Id.* Thus, subsection 1322(c)(1) describes one step in the foreclosure process rather than a single event, the auction. In Arkansas, it is well-settled law that "a judicial foreclosure sale is complete upon confirmation of the sale by the court." *Brown*, 282 B.R. at 882 (citing *Dellinger v. First Nat'l Bank*, 970 S.W.2d 223, 225 (Ark. 1998); *Fleming v. Southland Life Ins. Co.,* 564 S.W.2d 216, 218 (Ark. 1978)).

In the present case, the addition of subsection 1322(c)(1) enhanced and expanded Chapter 13 debtors' state law property rights by creating a federal right to cure a default on a home

mortgage "until such residence is sold at a foreclosure sale" "*[n]otwithstanding . . . applicable nonbankruptcy law*[.]" 11 U.S.C. § 1322(c)(1) (emphasis added). Although FSB correctly asserts and the debtors concur that their statutory and equitable rights of redemption under Arkansas property law terminated prepetition, the debtors' federal right to cure the default on their home, pursuant to 11 U.S.C § 1322(c)(1), did not terminate until the property was "sold at a foreclosure sale." Further, in Arkansas, a foreclosure sale is not complete until confirmed by the court.

The debtors entered into an Agreed Order with FSB on October 12, 2011, which permitted FSB to proceed with a foreclosure sale upon the debtors' failure to stay current on their monthly mortgage payments. In July of 2014, the debtors fell behind on their monthly mortgage payments to FSB. Consequently, FSB presented the Agreed Order to the Saline County Circuit Court on October 21, 2014. The Honorable Gary Arnold, Saline County Circuit Judge, signed the Agreed Order on October 28, 2014, and a foreclosure sale was set for November 18, 2014. One day prior to the sale, on November 17, 2014, the debtors filed a Chapter 13 voluntary petition. Although the debtors informed FSB and the Saline County Circuit Court of their bankruptcy filing, the debtors' home was sold to Regions Bank on November 18, 2014, for $34,000.00. On December 1, 2014, the Honorable Gary Arnold signed the *Order of Confirmation*, which confirmed the *Commissioner's Report of Sale*. The Saline County Circuit Clerk filed the order of confirmation on December 3, 2014.

Relying on either the gavel rule or the sold rule, the debtors' home was "sold at a foreclosure sale" *postpetition*—the commissioner's sale occurred one day after the debtors' filed bankruptcy and the order confirming the sale was signed thirteen days postpetition. 11 U.S.C. § 1322(c)(1). Thus, the court finds that the debtors' residence, located at 725 Forest Lane, Benton,

11

Arkansas, was alternatively (1) property of the debtors' estate at the time of the filing their Chapter 13 voluntary petition, pursuant to 11 U.S.C. § 541, because the debtors possessed a federal legal or equitable right to cure the default on their mortgage pursuant to 11 U.S.C. § 1322(c)(1), or (2) the debtors had a right "[n]otwithstanding . . . applicable nonbankruptcy law" expressly conferred by the Code as superseding federal law to cure under subsection 1322(c)(1).

Based upon the court's holding that the debtors' home is property of the debtors' estate pursuant to 11 U.S.C. § 541, the court finds that FSB violated the automatic stay imposed by 11 U.S.C. § 362 in proceeding with the commissioner's sale postpetition. Thus, the sale of the debtors' home is *void ab initio*. *LaBarge v. Vierkant* (*In re Vierkant*), 240 B.R. 317, 325 (B.A.P. 8th Cir. 1999) (holding that "action taken in violation of the automatic stay is *void ab initio*," rather than merely being voidable). The court, however, need not analyze damages for FSB's violation of the automatic stay as the court accepts the parties' representations that no damages should be awarded based upon the parties' agreement.

### IV. Conclusion

For the reasons stated above, the debtors' Amended Motion is granted.

IT IS SO ORDERED.

Dated this 10th day of February, 2015.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Beverly Brister
　　 Gary Jiles
　　 Fred Ausburn
　　 Janet L. Ausburn
　　 Mark T. McCarty